UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sandra W.,[1]

        Plaintiff,

v.

Kilolo Kijakazi,
*Acting Commissioner of Social Security*,

        Defendant.

Case No. 22-cv-1402 (DJF)

**ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Sandra W. ("Plaintiff") seeks judicial review of a final decision ("Decision") by the Commissioner of Social Security ("Commissioner") that denied her application for disability insurance benefits ("DIB") ("Decision"). This matter is presented for decision on the parties' cross motions for summary judgment.[2] Plaintiff asks the Court to enter judgment reversing the Commissioner's decision and asks the Court to remand this matter for further administrative proceedings. For the reasons set forth below, the Court grants Plaintiff's motion (ECF No. 15) in part,[3] denies the Commissioner's motion for summary judgment (ECF No. 18) and remands this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] The parties consented to have the undersigned United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.

[3] Plaintiff's motion (ECF No. 15) is unclear in that it fails to state what relief she is seeking, but the memorandum supporting her motion asserts a request for judgment reversing the Commissioner's decision and remanding this matter. (ECF No. 16 at 18.) The Court grants Plaintiff's request for reversal and remand but denies the motion to the extent she may be seeking any other relief.

# BACKGROUND

### A. Plaintiff's Background

Plaintiff applied for DIB on February 3, 2020. (Soc. Sec. Admin. R. (hereinafter "R.") 78.)[4] At that time she was a 64-year-old woman with a four-year college degree and Registered Nurse ("RN") Certification. (R. 38, 262.) She previously worked as a care manager for appeals and grievances at an insurance company; a nurse supervisor and case manager at a community clinic; an RN clinic manager; an RN clinic contractor; and a vision and hearing screening nurse for a school district. (R. 24, 363.) Plaintiff alleges she became disabled on April 1, 2019 (R. 77, 262) as the result of a right shoulder rotator cuff tear, status post rotator cuff repair and tendon repair; cervical disc disease; severe cervical stenosis with right radiculopathy; severe right arm pain; and mild left arm pain (R. 78, 362.) Her date last insured ("DLI") was March 31, 2021. (R. 77.)

### B. Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). "[A]

---

[4] The Social Security administrative record (R.) is filed at ECF No. 10. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." *Id.* § 416.920(a)(4)(i). The claimant then must establish that she has a severe, medically determinable impairment or combination of impairments at step two. *Id.* § 416.920(a)(4)(ii). At step three the Commissioner must find that the claimant is disabled, if the claimant satisfies the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). *Id.* § 416.920(a)(4)(iii).[5] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five to show that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

---

[5] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" impacted. *See* 20 C.F.R Part 404, Subpart P, App. 1.

3

C.     **Procedural History**

The Commissioner denied Plaintiff's application for DIB initially (R. 93-98) and on reconsideration (R. 100-103.)  On May 21, 2021, at Plaintiff's request (R. 104-105), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application.  Three people testified at the hearing:  Plaintiff, who was represented by an attorney; a medical expert ("ME"); and a vocational expert ("VE").  (R. 32-62.)  After the hearing, the ALJ determined Plaintiff had multiple impairments, which at least in combination were severe:  right shoulder degenerative joint disease with full thickness tear, mild muscle atrophy, labrum tearing, and acromioclavicular (AC) joint arthrosis, status post rotator cuff surgery in July 2019; cervical degenerative disc disease; bilateral osteoarthritis of the knees; insomnia; hypertension; and varicose veins.  (R. 15.)  The ALJ found, however, that Plaintiff's impairments did not meet or medically equal any impairment in the Listing.  (R. 116.)  He then determined that Plaintiff has the RFC "to perform light work as defined in 20 CFR 404.1567(b) except capable of frequent reaching, handling, fingering, and feeling bilaterally."  (R. 16.)  After thoroughly cataloging the evidence in the record, the ALJ determined that Plaintiff could perform her past work as a nurse case manager and stopped the sequential analysis at step four, concluding Plaintiff was not disabled.  (R. 24-25.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-6), and this lawsuit followed.

## DISCUSSION

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison*

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This "threshold … is not high." *Id.*  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Plaintiff argues the ALJ wrongly concluded she was not disabled because:  (1) the ALJ relied upon VE's testimony about her past work, which was "indecipherable" and does not support a decision to deny benefits; and (2) the ALJ's RFC finding, which mirrors the ME's testimony, is contrary to law and not supported by substantial evidence because the ME's testimony did not account for all of Plaintiff's medical conditions or the side-effects of her medications. (ECF No. 16 at 1, 4-18.)

### A. The VE's Testimony

Plaintiff argues the ALJ erred at step four in the five-step sequential analysis by wrongly concluding she could perform her past relevant work.  (ECF Nos. 16 at 4-6; 22 at 1-4.)  At step four, "the ALJ must consider whether a claimant's impairments keep her from doing past relevant work."  *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007); *see also* 20 C.F.R. § 404.1520(e).  It is Plaintiff's burden to show she cannot perform her past relevant work.  *Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019).  "The ALJ will find that a claimant is not disabled if [she] retains the RFC to perform … the actual functional demands and job duties of a particular past relevant job; or [ ] [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy."  *Id.*  "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled."  *Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000).  While a VE's testimony is not necessary to find that a claimant can perform

5

her past work, *Lewis v. Barnhart,* 353 F.3d 642, 648 (8th Cir. 2003), a VE's response to a properly posed hypothetical can supply substantial evidence to support an ALJ's finding that the claimant could return to past relevant work. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003).

Plaintiff's employment history included work as a "care manager" for an insurance company and as a case manager at a community clinic. (R. 363.) During Plaintiff's May 21, 2021 hearing, she described her position at the insurance company as "case manager." (R. 40.) She explained:

> I worked from home and for people who their case either the coverage for something like say a medication, a surgery, a procedure like an MRI or CAT scan, if any of those things were denied I was in the grievance department or appeals department and they and their provider could submit an appeal saying this is why this should be covered. And I did that. And it was 100% use of computer.

(R. 40.) Plaintiff testified that she used her computer to "find medical records, read them, write responses, request other records … look through various things," and when appropriate, "[t]ype the full synopsis for the provider and then send it to them for their review and their decision." (R. 40-41.) Plaintiff testified that her prior case manager position at the community clinic was also a home-based role she performed by using her computer. (R. 43.) She explained:

> This was contacting various groups of patients, say diabetic patients, patients with congestive heart failure, and they had certain protocols for the different, you know, problems that patients had, and then I would have to look through their records, then find out when did they have this certain test for diabetes. When did they last— what medications are they on … Write pretty much a review for the doctor. These were all patients who had upcoming appointments in the next month … I would like do a preview of the chart, prep it for the doctor. I'd call the patients. I would go into the record and order [necessary tests based on protocols].

(R. 43.) Plaintiff stated that she stopped working because her impairments made it very painful for her to use a computer. (R. 39, 47.)

The VE identified Plaintiff's occupation with the insurance company as a "Nurse, Case Manager, [Dictionary of Titles ("DOT")] 079.262-010, SVP 7, skilled, sedentary per DOT,

sedentary per Claimant," and her occupation at the community clinic as "Nurse, Case Manager, [DOT] 195.107-030, skilled, SVP 7, sedentary per DOT, sedentary per Claimant." (R. 57.) The VE stated that per the DOT, these occupations required "frequent"[6] reaching, handling, and fingering. He further testified that a hypothetical person limited to light work, but capable of frequent reaching, handling, fingering, and feeling bilaterally could perform both positions generally. (R. 57-58.) The ALJ asked the VE if his testimony was consistent with the DOT, and the VE represented that it was. (R. 60.)

Based on the VE's testimony, the ALJ concluded Plaintiff "was capable of performing past relevant work as a Nurse Case Manager (in two different positions)" which "did not require the performance of work-related activities precluded by the claimant's residual functional capacity." (R. 24.) He stated, "in comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, I find that the [Plaintiff] was able to perform it as generally performed." (R. 25.) The ALJ determined, though, that Plaintiff could not perform the work as "actually performed." (R. 25.) The ALJ also stated he "confirmed that the DOT and its companion volume, the Selected Characteristics of Occupations (SCO) characterize[d] the Case Manager position, DOT # 079.262-010 … and the Case Manager position, DOT # 195.107-030" as consistent with the VE's testimony. (R. 25.) The ALJ thus concluded that the VE's testimony was "reasonable and persuasive" and reiterated that Plaintiff could perform "her past relevant work as a Case Manager in the two different positions, both as generally performed in the national economy." (R. 25.)

But the Court doubts the ALJ's assertion that he confirmed the DOT is consistent with the

---

[6] "Frequent" describes an exertional limitation, meaning "occurring from one-third to two-thirds of the time." SSR 83-10.

7

VE's testimony. Indeed, occupation 079.262-101 does not actually appear in the DOT at all, and the DOT defines occupation 195.107-030 as a "Social Worker, Medical." DICOT 195.107-030 (G.P.O.), 1991 WL 671574. Alternate titles for this occupation include "Social Worker, Clinical," and "Social Worker, Health Services." *Id.* The DOT's job description for this position provides:

> Assists patients and their families with personal and environmental difficulties which predispose illness or interfere with obtaining maximum benefits from medical care: Works in close collaboration with physicians and other health care personnel in patient evaluation and treatment to further their understanding of significant social and emotional factors underlying patient's health problem. Helps patient and family through individual or group conferences to understand, accept, and follow medical recommendations. Provides service planned to restore patient to optimum social and health adjustment within patient's capacity. Utilizes community resources to assist patient to resume life in community or to learn to live within limits of disability. Prepares patient histories, service plans, and reports. Participates in planning for improving health services by interpreting social factors pertinent to development of program. Provides general direction and supervision to workers engaged in clinic home service program activities. Works in general hospitals, clinics, rehabilitation centers, drug and alcohol abuse centers, or related health programs. May be employed as consultant in other agencies. *Usually required to have knowledge and skill in casework methods acquired through degree program at school of social work.*

*Id.* (emphasis added.)

Plaintiff argues that because occupation 079.262-101 does not actually appear in the DOT, and occupation 195.107-030 differs both in title and description from Plaintiff's past work, the ALJ improperly relied on the VE's testimony to conclude Plaintiff could perform her past work and thereby hampered meaningful judicial review of the ALJ's Decision. (ECF Nos. 16 at 4-6; 22 at 1-4.) Plaintiff thus asks the Court to reverse the Commissioner's Decision and remand this matter to the Commissioner for further administrative proceedings. (ECF Nos. 16 at 6; 22 at 5.)

The Commissioner concedes that occupation 079.262-101 appears nowhere in the DOT (ECF No. 19 at 6), but she argues the ALJ's reliance on the VE's testimony was nevertheless appropriate because Plaintiff could perform her past work in occupation 195.107-030. (*Id.* at 7.)

8

The Commissioner contends that, while the DOT's title for occupation 195.107-030 is "Social Worker, Medical," the job description for the position closely matches Plaintiff's description of her own work. (*Id*. at 7-9.) To the extent the DOT job description and Plaintiff's testimony are not identical, the Commissioner points out that the VE testified Plaintiff could perform the job as "generally" performed in the national economy; not as she actually performed it. (*Id.* at 9.) Moreover, "the DOT provides 'generic job descriptions that offer the approximate maximum requirements for each position.'" (*Id.*, citing *Gieseke v. Colvin*, 770 F.3d 1186, 1189 (8th Cir. 2014).) The Commissioner further contends, "'DOT descriptions include all possible duties, but not necessarily all required duties.'" (*Id.* at 9, citing *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir.1997).)

The Court agrees with Plaintiff that the ALJ's reliance on the VE's testimony was improper and that there is insufficient evidence to support a finding that Plaintiff can perform her past relevant work. Whether or not Plaintiff can perform *some* aspects of occupation 195.107-030, there are multiple aspects of the job description that do *not* fit with her past experience. *See* DICOT 195.107-030 (G.P.O.), 1991 WL 671574 (describing tasks that do not involve computer work, including, *e.g.*, group conferences with patients and their families). It is particularly notable that the DOT titles the position "Social Worker, Medical," and the job description clearly states a person in this role is, "Usually required to have knowledge and skill in casework methods acquired through degree program at school of social work." DICOT 195.107-030 (G.P.O.), 1991 WL 671574. There is no evidence to suggest Plaintiff has a degree or any training in social work. The field of Social Work is entirely different from the field of nursing. While both fields may work to advance the health and well-being of individuals in and out of healthcare settings, the methods, and skillset underlying each field vary greatly. The Court cannot conclude that Plaintiff is capable

of "generally" performing an occupation for which she lacks the training and experience to meet most of the job requirements. Having carefully compared the DOT job description for occupation 195.107-0301991 with Plaintiff's testimony, the Court finds it is unrelated to her past work.

To the extent the Commissioner relies on *Gieseke*, 770 F.3d at 1189, and *Hall*, 109 F.3d at 1259, to argue that DOT job descriptions are generic and reflect just a range of possible job duties, the Court notes that those cases challenged the physical and mental requirements necessary to perform the jobs in question; neither case challenged the job description itself or whether it accurately reflected the plaintiffs' past work. Here, the VE clearly erred when he cited one occupation that does exist in the DOT at all, and another that does not match Plaintiff's past work in either its title or requirements. The Court concludes the ALJ also erred in relying on the VE's testimony.

The ALJ clearly found the VE's testimony "reasonable and persuasive" and reached the ultimate conclusion that Plaintiff was not disabled based on her ability to perform her past relevant work in reliance on that testimony. (R. 25.) He therefore ended the five-step sequential analysis at step four. The Court does not presume to know whether there is a correct DOT title or job description that accurately reflects Plaintiff's past work. But the Court cannot engage in *post hoc* rationalizations to uphold an ALJ's decision. *See Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168-69 (1962). The Court cannot meaningfully review the ALJ's Decision because it is unclear whether Plaintiff could actually perform her past work or any other work that exists in significant numbers in the national economy. The Court accordingly reverses the Commissioner's decision and remands this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

On remand, the ALJ must: (1) properly determine and support any finding that Plaintiff is

capable of performing her past relevant work by articulating a rational basis for any such finding; or (2) evaluate whether the Commissioner has met her burden at step five of the sequential analysis to show that Plaintiff can perform other work that exists in significant numbers in the national economy.

**B.     Plaintiff's RFC**

Plaintiff next argues the ALJ's RFC finding is not based on substantial evidence. (ECF No. 16 at 6-18.) She claims the ALJ wrongly based her RFC on the medical expert's opinion, which did not account for all of her medical conditions, including her knee condition or the side effects of her medications. (*Id.*) Plaintiff also contends the ALJ wrongly discounted her own testimony and her treating physician's opinion that Plaintiff required greater limitations than the ALJ included in her RFC. (*Id.*)

It is the claimant's burden to prove her RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). The ALJ bears primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000). "Because a claimant's RFC is a medical question, an ALJ's assessment must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley*, 829 F.3d at 932 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). The "ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional." *Baldwin*, 349 F.3d at 556. The ALJ must determine the claimant's RFC based on all of the relevant medical and non-medical

evidence. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016); 20 C.F.R. § 404.1545(a)(3). An ALJ's RFC determination is acceptable if it is supported by at least some medical evidence based on the ALJ's independent review of the record. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002).

On April 5, 2021, Plaintiff's treating physician, Dr. Hilde-Philips, opined that: (1) Plaintiff frequently needed to change positions from sitting to standing due to Plaintiff's chronic knee pain; (2) Plaintiff's pain medications occasionally affected her cognitive abilities of decision-making and executive functioning; (3) Plaintiff was only able to perform fine motor movements with her dominant right hand for up to twenty minutes at a time; and (4) Plaintiff was able to lift no more than 10-15 pounds. (R. 758.)

During Plaintiff's May 21, 2021 hearing, medical expert Dr. Gilberto Munoz testified that Plaintiff's severe impairments included right rotator cuff surgical repair, hypertension, insomnia, varicose veins, and cervical spine disease. (R. 52.) Dr. Munoz did not comment on Plaintiff's bilateral knee osteoarthritis. (R. 53.) He further opined that Plaintiff did not have a medical impairment that met or equaled the requirements of any Listing. (R. 53.) Based on Plaintiff's impairments, Dr. Munoz testified that Plaintiff would be limited to "light work" with a frequent ability to reach, handle, and finger bilaterally, and perform overhead reaching activity. (R. 53-54.)

In determining Plaintiff's RFC, the ALJ explained that he considered the entire record, including both medical and nonmedical evidence, to conclude that Plaintiff had the capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except that she is capable of only "frequent" reaching, handling, fingering, and feeling bilaterally." (R. 16-23.) The ALJ observed that while Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged; Plaintiff's statements concerning the intensity, persistence and limiting

effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 18.)

The ALJ explained that he found Dr. Munoz's opinion persuasive because Dr. Munoz was well-qualified to opine on the matter, his opinion was based on a review of the whole record, the record was fully supportive of his analysis, and his conclusions were consistent with the record. (R. 22.)  The ALJ also explained that he found Dr. Hilde-Philip's opinion only "partially" persuasive, because while her opinion was based on regular examination and treatment of Plaintiff during the claim period, her conclusions were only partially supported by the whole body of evidence, including clinical examinations and electromyography findings. (R. 23.) The ALJ found that the limitations Dr. Hilde-Philips recommended were excessive, vague and not well-quantified in vocational terms. (R. 23.)

For example, the ALJ found Dr. Hilde-Philip's limitations related to Plaintiff's bilateral knee osteoarthritis excessive when Plaintiff did not have a specialist evaluation or ongoing treatment plan for knee pain. (R. 21, citing R. 751, 754, 756.)  He noted that examination of Plaintiff's knee showed no significant swelling or joint space tenderness, or injury of fall, and that the only positive finding was tenderness, particularly on Plaintiff's left knee. (R. 21, citing R. 751, 754.)  The ALJ also cited x-rays of Plaintiff's knees, which showed some osteoarthritis, normal alignment, no joint effusion, and only mild to moderate joint space narrowing with mild spurring of the patellofemoral compartments bilaterally. (R. 21, citing R. 756.)  The ALJ further observed that Plaintiff's treatment related to her knee pain was conservative, in that Dr. Hilde-Philips only recommended applying a topical gel and performing some quad and hamstring exercises. (R. 21, citing R. 754.)

The ALJ was similarly unpersuaded by Dr. Hilde-Philip's opinion that Plaintiff could lift

13

no more than 10-15 pounds and could not use her right hand for fine motor activities for more than 20 minutes at a time, finding such extreme limits were not supported by Plaintiff's exam findings. (R. 23.) The ALJ noted that despite her pain complaints, Plaintiff had normal strength, sensation, and reflexes and no findings of reduced hand function or grip strength. (R. 19-20, citing 502, 596-597, 661, 695-696, 669, 704, 710.)

Finally, the ALJ explicitly rejected Dr. Hilde-Philip's opinion related to Plaintiff's impaired cognitive function due to medications based on a lack of objective evidence in the record. He noted the opinion was "not supported by any objective mental status examination findings or observations of obvious signs of drowsiness, sleepiness, or impaired decision making or executive function." (R. 23.)

The ALJ also considered relevant non-medical evidence, finding Plaintiff's activities of daily life supported his RFC determination. (R. 21.) He observed that in January 2021, Plaintiff was planning to volunteer to help with COVID-19 vaccine distribution. (R. 21, 50-51, 744). He further noted Plaintiff had plans to travel to Florida. (R. 21, 622). He also observed that Plaintiff: (1) spent time with her family; (2) made simple meals; (3) did chores such as shopping and putting groceries away, sweeping, dusting, doing laundry, making the bed, taking out trash, raking, and picking up sticks and debris outside; (4) watched tv, read, went for walks, and went in a paddleboat daily in the summer; (5) did simple baking once a week; and (6) handled money without difficulty and did not need reminders to do things; but (7) no longer engaged in prior hobbies such as taking ukulele classes and staining glass. (R. 21, 389-391.) Finally, the ALJ noted that while Plaintiff reported difficulty with concentrating and attention due to medications, she stopped taking medications that were too sedating and showed normal mental status findings throughout the claim period. (R. 21.)

14

Plaintiff cites to various evidence that she claims supports a more restrictive RFC. (ECF No. 16 at 6-18.) And though that evidence might reasonably support a more restrictive RFC, "[i]t is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." *Cox*, 495 F.3d at 617 (internal citations omitted). While Plaintiff may disagree with how the ALJ weighed the evidence as to her RFC, the Court finds that the ALJ properly reviewed the record and supported his findings with substantial evidence. Although it is true the ALJ's RFC determination closely tracks Dr. Munoz's opinion, the ALJ's Decision clearly reflects that he considered the record as a whole, including Plaintiff's knee impairment and any potential consequence of her medications. Since the ALJ stated he found Dr. Munoz's analysis and conclusions consistent with the record as a whole, it is unsurprising the ALJ's RFC determination is consistent with Dr. Munoz's opinion. The ALJ further properly explained why he found Dr. Hilde-Philip's opinion unpersuasive, and that Plaintiff's testimony and self-report did not support greater limitations than those he included in Plaintiff's RFC. Because the ALJ properly considered the record as a whole and substantial evidence supports the ALJ's findings related to Plaintiff's RFC, the Court must affirm it. *Perks*, 687 F.3d at 1091.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment in part and denies the Commissioner's motion for summary judgment. The Court remands this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

## ORDER

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. [15]) is **GRANTED IN PART** and **DENIED IN PART**:

    A. The Commissioner's denial of benefits is reversed and this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order; and

    B. Plaintiff's Motion for Summary Judgment (ECF No. [15]) is **DENIED** in all other respects.

4. The Commissioner's Motion for Summary Judgment (ECF No. [18]) is **DENIED**; and

5. This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINLY**.

Dated: September 11, 2023

*s/ Dulce J. Foster*
DULCE J. FOSTER
United States Magistrate Judge